**IN THE COURT OF APPEALS OF IOWA**

No. 24-0723
Filed October 2, 2024

**IN THE INTEREST OF D.P. and D.P.,**
**Minor Children,**

**M.L., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Clay County, Andrew Smith, Judge.


        A mother appeals the termination of her parental rights to her two sons.
**AFFIRMED.**


        Tyler J. Alger, Sandy Law Firm P.C., Spirit Lake, for appellant mother.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, for appellee State.

        Debra S. De Jong of De Jong Law Firm, P.C., Orange City, attorney and
guardian ad litem for minor children.


        Considered by Greer, P.J., and Buller and Langholz, JJ.  Sandy, J., takes
no part.

**LANGHOLZ, Judge.**

During child-in-need-of-assistance ("CINA") proceedings involving her two young sons, a mother struggled to stay on track with her substance-use and mental-health treatment. She cycled through periods of progress and regress—engaging with services and making progress, then retreating and relapsing. After the boys spent over a year in foster care and the mother was caught with illegal marijuana and other drug paraphernalia while in the car with the sons, the State petitioned to terminate the mother's parental rights. The district court agreed, finding the mother had not progressed to a point where the sons could be safely returned to her custody and that termination was in their best interests.

The mother appeals, arguing that the State failed to prove grounds for termination because her substantial compliance with her treatment showed her sons could be safely returned and that termination was not in her sons' best interests. But the mother downplays her noncompliance. While she indeed had stretches of progress, those periods were always followed by spans of relapses or skipped appointments. And by the termination hearing, the mother was "basically starting over" with her treatment, more than two years after the CINA proceedings began. So we agree that the sons could not be safely returned to her care.

Beyond the mother's sobriety concerns, both boys have special needs and require regular appointments with healthcare providers. The boys also spent the twenty-two months leading up to the termination hearing in foster care. While we commend the mother for reengaging with services and do not doubt she loves her sons, the boys are best served by consistency and finality. We thus affirm the juvenile court's termination of the mother's parental rights.

## I.      Factual Background and Proceedings

The mother[1] has two sons—an older son born in March 2019 and a younger son born in March 2021.  The boys came to the attention of the Department of Health and Human Services ("HHS") in December 2021, when the mother was accused of using marijuana in the home.  The boys were adjudicated as children in need of assistance in March 2022 but remained in their mother's custody.

Throughout the CINA proceedings, the mother struggled to stay consistent.  At first, the mother did not meaningfully engage with services and treatment—missing many substance-use and mental-health appointments in April and May.  And she tested positive for methamphetamine in late May.  As a result, the boys were immediately removed from her custody and placed with foster families.[2]

After losing custody of the boys, the mother reengaged with treatment.  She entered a residential treatment program in July and transitioned to a halfway house in August.  She then began a relationship with a man with a similar history of substance use.  The mother first tried to conceal the relationship from social workers, though she later confirmed it.  And the boyfriend conveyed willingness to participate in services.  The mother's upswing continued into the fall, and she was successfully discharged from her treatment program in November.

---

[1] The CINA and termination proceedings also involved the sons' father, and his rights were terminated too.  But he does not appeal, so we focus on the mother.
[2] The boys were first placed with the same foster family, but the older son showed signs of autism and needed special care.  The boys were placed in separate foster families for nearly eight months and were reunited in February 2023, when the younger son was placed with the older son's foster family.  They have remained together with that foster family ever since.

But after her discharge, the mother started to backslide. She stopped showing up to her appointments and missed visits with the boys more often. And she regressed further in February 2023, testing positive for methamphetamine and THC. Though the mother again enrolled in outpatient treatment and had a few positive visits with her sons, that progress was short lived—she continued using methamphetamine and marijuana through March and April and rarely attended her appointments. Also around then, the mother obtained a medical cannabis card.

During the summer of 2023, the mother started to take her treatment more seriously, spurring another period of progress. She attended most of her mental-health and substance-use appointments and stopped using methamphetamine, though she continued to use marijuana. Given these improvements, her visits progressed to overnights and the juvenile court—against the recommendation of the guardian ad litem—granted the mother six more months to work toward reunification in early October.

But the mother's marijuana use continued to be a problem. Her visitation terms instructed she was not to use any marijuana, even medical cannabis, during visits with her boys. Yet twice in October, the boys returned from their overnight visits "smelling strongly of marijuana." After the issue was raised with the mother, the boys returned from the next weekend visit with their "clothing smelling like laundry beads or laundry sheets."

The marijuana issue came to a head one day in November, when the boys were riding in the car with the mother, the boyfriend, and the boyfriend's daughter. They were pulled over by law enforcement, who observed "an overwhelming odor of marijuana coming from the vehicle." The officers searched a backpack sitting

at the mother's feet in the car, which contained "around 25-30 different illegal vapes, [a] grinder, baggies, [a] scale, and ½ pound of marijuana." Officers also found another pound of marijuana next to the boyfriend's thirteen-year-old daughter in the backseat. As a result, both the boyfriend and mother were criminally charged. HHS also issued a founded child-abuse assessment against the mother, and the mother conceded she was "using illegal marijuana on a consistent basis."

A month later, the State petitioned to terminate the mother's parental rights to her sons. While the termination action was pending, the mother continued to regress. She was discharged from her treatment program in January 2024 for attendance issues and not timely testing. The mother then sought treatment elsewhere—skipping her initial intake appointment but eventually enrolling in the program.

The mother also struggled to parent and stay engaged with the boys. Her visitation reverted to supervised visits, where she exhibited difficulty handling the boys in public settings. By now, both boys had special needs—the older son was nonverbal and diagnosed as on the autism spectrum and the younger son received speech therapy. The mother largely failed to keep in contact with their providers and school teachers. She stopped contacting the boys between visits. And she did not request extra visits despite having the option to do so.

After a one-day hearing in March 2024, the juvenile court terminated the mother's parental rights to both sons under paragraphs "f" and "h" of Iowa Code section 232.116(1) (2023). In a thorough decision, the juvenile court commended the mother's efforts but acknowledged that "street marijuana remains an issue and

that the use of marijuana impacts decision-making by [the mother] which places her children at risk." The court emphasized the boys were "young children with special needs, who are in need of structure, stability, and consistency beyond that of normal children." And the court found it "difficult to envision [the mother] maintaining consistency when adding the appointments and needs of her children to her own." So the court found termination best served the sons and denied the mother's request for six more months to work toward reunification.

The mother now appeals, challenging whether the State proved the grounds for termination and whether termination best serves the sons.

## II.      Grounds for Termination under Paragraphs "f" and "h"

Terminating parental rights follows a three-step process. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). First, the State must prove by clear and convincing evidence a ground for termination under Iowa Code section 232.116(1). *Id.* Second, the State must similarly prove termination serves the children's best interests. *Id.* And third, the parent carries the burden to show a statutory exception precludes termination. *Id.* We review the termination decision de novo, giving appropriate weight to the district court's fact-finding and credibility decisions. *Id.*

The mother's parental rights were terminated under paragraphs "f" and "h" of Iowa Code section 232.116(1). For each ground, the first three elements are not in dispute. The mother concedes that her sons were five and three at the time of the termination hearing, they were adjudicated in need of assistance, and they had been removed from her custody for over twelve consecutive months. *See generally* Iowa Code § 232.116(1)(f)(1)–(3), (h)(1)–(3). Instead, the mother focuses solely on the fourth element of each ground, challenging whether the State

proved the sons could not be returned to her custody at the time of the hearing. *See id.* § 232.116(1)(f)(4), (h)(4). And the mother frames this issue narrowly— arguing that because she substantially complied with treatment orders during the CINA proceedings, the sons should have been returned to her custody.

To begin, our inquiry under the fourth element is broader than merely inquiring into a parent's degree of compliance with treatment orders. To determine whether a child can be safely returned to a parent's custody, we look to section 232.102. *See id.* §§ 232.116(1)(f)(4), (1)(h)(4). That section, in turn, instructs that "preserving the safety of the child is the paramount consideration" and children should not be returned to a parent's custody if doing so would expose them to "some harm which would justify the adjudication of the child as a child in need of assistance." *Id.* § 232.102(4)(a)(2), (b); *see also, e.g.*, *In re M.W.*, 876 N.W.2d 212, 223 (Iowa 2016) (considering a host of circumstances that undermined the children's ability to be safely returned to the mother's custody, even though the mother had "undergone substance abuse treatment and mental health evaluations").

The juvenile court properly applied this factor broadly, and we agree with its conclusions. The mother is "basically starting over with her substance abuse treatment, at only the contemplative stage,[3] over two years after [HHS] first became involved." What's more, her road to lasting sobriety is complicated by her relationship with her boyfriend, who has his own history of substance use. So whether the sons would be safe in the mother's custody does not just turn on her

---

[3] A social worker testified that the contemplative stage is "when an individual is acknowledging there is a problem, but has not quite made the steps to change."

own sobriety, but the boyfriend's as well. And the mother gave the court "little to no evidence regarding his current circumstances and the extent to which any involvement he has is positive in nature." Finally, the mother testified that beyond illegal marijuana and methamphetamine, she also struggles with alcohol and had consumed alcohol about two weeks before the hearing. Thus, at the time of the termination hearing, there were serious questions about whether the boys could be safely returned to the mother's custody.

And even if we accepted the mother's narrow framing, we would still affirm the juvenile court because she did not substantially comply with her treatment recommendations. During the two years of CINA proceedings, the mother's progress ebbed and flowed—marked by spans of improvement then spans of disengagement. Indeed, roughly three months before the termination hearing and after the termination petition was filed, she was discharged from her program for noncompliance. So the mother's record does not reveal a degree of abidance that, while short of perfect, still substantially met her directives. To the contrary, the mother's inconsistency has led her back to square one in her treatment. Thus, the sons could not be safely returned to the mother's custody at the time of the termination hearing and the State proved termination is warranted under paragraphs "f" and "h."

### III.    Best Interests of the Children

Moving to the second step, the mother disputes that termination best serves the boys and instead argues that she should get six more months to work toward reunification. When evaluating the best interests of the sons, we give "primary consideration" to their "safety, to the best placement for furthering [their] long-term

nurturing and growth," and to their "physical, mental, and emotional condition[s] and needs." Iowa Code § 232.116(2). We also consider both the "long-range" and "immediate interests" of the sons, focusing on "what the future holds for the child[ren] if returned to the parents. When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997).

We find termination best serves the sons. Both boys have special needs that require not just reliability and consistency in the home but also regular attendance at their healthcare appointments. The older son sees a physical therapist, occupational therapist, and a speech therapist, and also goes to a "child health specialty clinic." And the younger son attends speech therapy and was recently referred to physical and occupational therapy. Like the juvenile court, we are not convinced the mother would ensure her sons routinely attended these appointments. Before the CINA case was opened, the children were behind on their checkups—neither boy had been to the doctor in over a year. During the CINA proceedings, the mother rarely attended the boys' appointments. And at the termination hearing, she could not name any of their providers. So we cannot say that the sons would receive all necessary care if returned to their mother's custody.

The mother's marijuana usage or overall sobriety also has not reached a point where the boys would be safe in her care. While we commend the mother for recently reengaging with services, "patience with parents can soon translate to intolerable hardships for their children." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987). Indeed, the sons had been in foster care for roughly twenty-two months at the time of the termination hearing. "The crucial days of childhood cannot be

suspended while parents experiment with ways to face up to their own problems," and we will not delay permanency and leave children to languish in foster care in the hopes that this time will be different. *Id.*; *see also In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). We do not doubt that the mother loves her children. But termination of her parental rights now is in the sons' best interests.

Because the mother does not allege that any statutory exception applies, we thus affirm the termination of her parental rights.

**AFFIRMED.**